IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:15cr18

SPENCER A. COLEY, JR.,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's MOTION TO
REDUCE SENTENCE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT
AND MEMORANDUM IN SUPPORT (ECF No. 54) (the "MOTION"); the United
States' Response in Opposition to Defendant's Motion for
Compassionate Release (ECF No. 59); the REPLY TO GOVERNMENT'S
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE
RELEASE (ECF No. 62), the PRESENTENCE REPORT ("PSR") (ECF No. 24),
PSR with Addendum ("PSRA") (ECF No. 25), and the WORKSHEET IN
RESPONSE TO MOTION FOR COMPASSIONATE RELEASE (ECF No. 65). For the
reasons set forth below, the MOTION will be granted.

## BACKGROUND

The defendant, Spencer A. Coley, was named in a four count
Indictment returned by the grand jury on February 3, 2015. On April
9, 2015, Coley pled guilty to COUNTS ONE and THREE of the
Indictment, which charged him with violations of 18 U.S.C.
§ 1951(a) for Interference With Commerce By Robbery, and he pled

guilty to COUNT FOUR, which charged him with a violation of 18 U.S.C. § 924(c) Brandishing a Firearm in Furtherance of Crime of Violence. As agreed in the plea agreement, the Government dismissed COUNT TWO of the Indictment, which charged Coley with another violation of 18 U.S.C. § 924(c).

In the first robbery, Coley entered a College Mart and was asked to take his mask off. He did so, bought something in the store, and left. He then returned to the store with the mask on, holding a revolver and pointing it at the clerk. Coley demanded the money, $400, from the register. In the second robbery, Coley saw the manager of the Red House Chinese Restaurant withdrawing change from the bank. When the manager left the bank, Coley approached him, pointed the firearm at him and demanded the bag. The manager dropped the bag, which contained $4,160, and Coley picked it up. ECF No. 25 ¶ 5 (citing ¶¶ 3-5 of the Statement of Facts, ECF No. 17).

Coley's criminal history began at age 15, with charges of Disorderly Conduct and Resisting Arrest. Id. ¶ 35. Thereafter, he was convicted of Possession of Marijuana, Carrying a Concealed Weapon twice, Possession of a Firearm by a Minor, Driving on a Revoked or Suspended License, Assault and Battery, and Sexual Battery. Id. ¶¶ 36-40. As an adult, between ages 18 and 20, Coley was found guilty of five counts of Driving on Suspended or Revoked

2

Operator's License, Two Failures to Appear, Receipt of Stolen Property, Accessory After the Fact to Attempted Robbery, and a Possession of Unregistered Firearm/Sawed-Off Shotgun. Id. ¶¶ 42-49.

According to the PSRA, the statutory maximum for COUNTS ONE and THREE was 20 years (240 months) each to run concurrently. The mandatory minimum for COUNT FOUR was 7 years consecutive. Id. ¶ 94. The Base Offense Levels for COUNTS ONE and THREE were 20. Brandishing (the charge in COUNT FOUR) added 5 points to COUNT ONE for an Adjusted Offense Level of 25. No adjustments were added to COUNT THREE so that Adjusted Offense Level was 20. The highest Adjusted Offense Level of 25 was then increased by 1 (Multiple Offense Adjustment) producing a Combined Adjusted Offense Level of 26 for COUNTS ONE and THREE. When reduced for Acceptance of Responsibility, the Total Offense Level for COUNTS ONE and THREE was 23. Id. at 6-7.

For COUNT FOUR (Brandishing), the guideline sentence was the statutory minimum (7 years consecutive to COUNTS ONE and THREE). Id. ¶ 54.

All of that produced a guideline range for COUNTS ONE and THREE of 70-87 months, followed by a consecutive 84 months on COUNT FOUR. The guideline range was thus 154-171 months.

In the Plea Agreement, the parties agreed to recommend a sentence of 240 months – the statutory maximum - on each Robbery to be served concurrently, plus the consecutive 84-month mandatory minimum for COUNT FOUR. In total, the parties agreed to a sentence of 324 months, or 27 years. That far exceeded the guidelines range for those three offenses, which would have been 154-171 months. But, as the parties note, if Coley had been charged with, and convicted of, all four indicted counts, his guideline sentence would have been 238-255 months because COUNT TWO (another § 924(c) charge) would not have been dismissed.

Coley argues that the primary reason that he agreed to a sentence of 324 months was the threat of the mandatory sentence stacking which would have applied to his case had he not pled guilty. ECF No. 49, 12-13. If he had been sentenced on all four charges in 2015, the two § 924(c) counts alone would have required a minimum of 32 years, 7 years for the first, and 25 years for the second. Then, the robbery sentences would be stacked, resulting in a minimum of 454 months, or nearly 38 years. To avoid that fate, Coley accepted the 27 years.

Because of the Plea Agreement, both the Government and Coley moved for an upward variance to reach the agreed upon sentence. Although, at first, the Court expressed discomfort with a sentence so far out of the guidelines range (ECF No. 49, 4-6), Coley

4

ultimately was sentenced to the agreed 324 total months with supervised release to follow. ECF No. 36.

The MOTION presents three arguments in support of the request for compassionate release: (1) Coley's rehabilitation, (2) Coley's age and mental health at the time of the offense, and (3) the disparity of his sentence, given the recent changes to § 924(c). The MOTION also argues that the 18 U.S.C. § 3553(a) factors support compassionate release.

Although the MOTION acknowledges the seriousness of Coley's crimes, it argues that those crimes reflected his struggles to cope with mental illness, rather than the deeply considered plans of a conniving criminal and that he has made significant progress in improving his mental health and is rehabilitated. Further, the MOTION points out the disparities between the sentence Coley received and the sentence that would likely have been imposed had Coley been sentenced today. Finally, it argues that Coley has a release plan involving a stable place to live with his mother, mental health treatment, and a job.

## DISCUSSION

### I.   The Statutory Framework

The applicable statute, 18 U.S.C. § 3582(c)(1)(A) provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that

'extraordinary and compelling reasons' warrant such a reduction."
It is settled that the burden is on the defendant to prove that
extraordinary and compelling conditions exist for compassionate
release under § 3582(c)(1)(A)(i). United States v. White, 378 F.
Supp. 3d 784, 785 (W.D. Mo. 2019).

As the United States Court of Appeals for the Fourth Circuit
recently explained:

> Congress authorized 'compassionate release'
> in 18 U.S.C. § 3582(c)(1)(A). That provision begins
> with the general rule that a 'court may not modify
> a term of imprisonment once it has been imposed.'
> Id. It then describes an exception to that rule,
> in which courts may consider motions made by
> defendants who have exhausted their administrative
> remedies and are seeking a sentence modification.
> Id.; see also United States v. Betheau, 54 F.4th
> 826, 831 (4th Cir. 2022). A court can grant a
> compassionate release motion if it finds that (1)
> 'extraordinary and compelling reasons warrant such
> a reduction,' (2) 'that such a reduction is
> consistent with applicable policy statements
> issued by the Sentencing Commission' and (3) that
> the § 3553(a) factors weigh in favor of granting
> relief, 'to the extent that they are applicable.'
> See § 3582(c)(1)-(2).
>
> Elements one and two are supposed to work
> together. Because '[§]3582(c)(1)(A)(i) does not
> attempt to define the "extraordinary and
> compelling reasons" that might merit compassionate
> release,' the 'Sentencing Commission, pursuant to
> authority granted it by Congress,' does so
> instead. McCoy, 981 F.3d at 276 (quoting §
> 3582(c)(1)(A)(i))). But that only works when there
> is an applicable policy statement. . . . Without
> a policy statement applicable to compassionate
> release motions made by defendants, the district
> court had discretion to make its 'own independent
> determination of what constitutes an extraordinary

6

and compelling reason under § 3582(c)(1)(A). . . .
.' Id. at 284 (cleaned up).

If a district court <u>finds extraordinary and</u>
<u>compelling circumstances warrant a sentence</u>
<u>reduction</u>, it must <u>then consider whether the</u>
<u>factors in § 3553(a) support such a decrease</u>. The
§ 3553(a) factors include 'the nature and
circumstances of the offense' as well as the
defendant's history and characteristics, the
'kinds of sentences available,' and 'the need to
avoid unwarranted sentence disparities among
defendants with similar records who have been
found guilty of similar conduct. § 3553(a)(1),
(3), (6). They also include the need for the
sentence 'to reflect the seriousness of the
offense, to promote respect for the law, . . . to
provide just punishment for the offense,' to deter
criminal conduct, to protect the public and to
provide the defendant with appropriate resources
such as 'medical care' and 'vocational training.'
Id. § 3553(a)(1). But district courts are only
required to address the § 3553(a) factors 'to the
extent that they are applicable.' § 3553(a).

<u>United States v. Burleigh</u>, 145 F.4th 541, 547-48 (4th Cir. 2025).

If Coley were sentenced today on both COUNTS of 18 U.S.C. §
1951(a), and both COUNTS of § 924(c), the guidelines range would
be 46-57 months for the § 1951 offenses and a mandatory consecutive
84 months for each § 924(c).[1] In that case, his total sentencing
range would be 214-225 months. If he were sentenced on both COUNTS
of 18 U.S.C. § 1951 and only one COUNT of 924(c), his guidelines

---

[1] The Worksheet in Response to Motion for Compassionate Release
correctly identifies that if Coley was convicted on both counts of
§ 924(c), the 5-level enhancement for brandishing would not apply,
and thus the guidelines range would be 46-57 months. U.S.S.G. §
2K2.4 n.4. ECF No. 65, 2 n.2.

range would be 70-87 months for the § 1951 convictions, and a mandatory consecutive 84 months for the § 924(c). In that case, his total sentencing range would be 154-171 months. Those ranges are important to the analysis, and to application of the principles of <u>Burleigh</u> which guide the analysis of Coley's motion for compassionate release.

## II.  The Exhaustion Requirement

To begin, the Court may consider a motion for compassionate release only if the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the Warden of the defendant's facility whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). If the defendant has administratively exhausted his claim for release or the Government does not contest the exhaustion requirement, the district court will conduct a two-step inquiry to decide whether to reduce the defendant's sentence under the statute. <u>United States v. Bond</u>, 56 F.4th 381, 383 (4th Cir. 2023).

Coley states that he requested, from the BOP, a sentence reduction for compassionate release on September 28, 2022, and did not hear back by December 8, 2022. ECF No. 54, 9. The United States acknowledges that Coley did make such a request on September 28,

8

2022. ECF No. 59, 7-8. The United States also provides the Warden's denial dated October 21, 2022. ECF No. 59-2. Accordingly, Coley has satisfied the exhaustion requirement.

## III. Extraordinary and Compelling Reasons

Now the inquiry turns to whether Coley has established the existence of extraordinary and compelling reasons that warrant compassionate release. The Sentencing Commission, as a matter of policy, has set forth six reasons that can be considered to be extraordinary and compelling under 18 U.S.C. § 3582(c)(1)(A)(i). They are:

> (b) EXTRAORDINARY AND COMPELLING REASONS.[2]—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT
>> (2) AGE OF THE DEFENDANT
>> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT
>> (4) VICTIM OF ABUSE
>> (5) OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time

---

[2] Subsections (1) – (4) have no application to this case so only the titles of the subsections are set out above.

9

the motion is filed, and after full consideration of the defendant's individualized circumstances.

And, § 1B1.13(c) and (d) provide:

(c) LIMITATIONS ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

(d) REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C. § 944(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(b)(1)-(6), (c), (d).[3]

Coley makes three primary arguments in favor of Compassionate Release: "(1) his exemplary and self-motivated rehabilitation in the face of 27 years behind bars; (2) his age and mental health at the time of the offense conduct; and (3) the threat of 'stacked'

---

[3] Coley relies largely on United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), wherein the Fourth Circuit held that, in the absence of a Guidelines policy statement, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (citation omitted) (emphasis added). However, because in this case there is a Guideline policy statement, the "any extraordinary and compelling reason" that might be raised does not apply.

§ 924(c) convictions that informed the basis for his plea agreement." ECF No. 54, 9-10.

### A. Exemplary and Self-Motivated Rehabilitation

Coley argues that he has "focused on education, self-improvement, and becoming a changed man." ECF No. 54, 10. He asserts that he now has a proactive attitude about his mental health and takes his medication, and that his job and the classes he has taken combined with his lack of infractions since 2019 reflect that he has taken control of his mental health. Id. at 3, 11, 14, 21. While incarcerated, Coley earned his GED, has largely been disciplinary infraction free for years, and is in the Challenge Program, all of which do reflect successful self-improvement efforts. Id. at 19; ECF No. 54-1, 4.

However, the Government argues that Coley has "continuously violated prison rules by sustaining disciplinary infractions while in BOP custody." ECF No. 59, 7. The Government then lists 30 infractions Coley has received, including 4 from his prior term of incarceration, and argues that such conduct undermines Coley's claim of rehabilitation.

In fact, Coley's first six years of incarceration on this sentence were marred by infractions. On five separate occasions between 2016 and 2019, Coley was found with various sharpened objects (including a 6.75-inch sharpened metal weapon, 7.5-inch

sharpened metal weapon, 8-inch sharpened metal weapon, and two 6-inch plastic sharpened weapons). Id. at 24. Coley was also involved in a fight in 2020 where he and another inmate were hitting each other with closed fists. Id. These infractions do not reflect an exemplary record while incarcerated. Nor do they support a claim that Coley is rehabilitated.

Coley argues that his intention when possessing weapons was only to defend himself. That is not a mitigating factor. He also contends that his disciplinary infractions have stopped, indicating that he has a better handle on the mental health problems at the root of his behavior. ECF No. 62, 3-5. True, Coley's record reflects no disciplinary infractions since 2021. Although four years without disciplinary infractions is a significant improvement, combined with taking classes and being in the Challenge Program, Coley's record here, while in prison, considered as a whole, does not present an extraordinary and compelling reason for compassionate release, especially in light of the history of the dangerous infractions.

Even if the record was free of infractions, rehabilitation alone cannot be an extraordinary and compelling reason. 28 U.S.C. § 944(t), U.S.S.G. § 1B1.13(d). See, e.g., United States v. Muhammad, No. 3:14cr55, 2021 WL 3779632, at *3 (E.D. Va. Aug 25,

2021). Rehabilitation can be considered, but it can only be considered along with other independent reasons.

**B.    Age at the Time of the Offense and Mental Health**

So, Coley also argues that his young age and serious mental health condition at the time of the offense constitute an extraordinary and compelling reason for compassionate release. ECF No. 54, 11. He points out that, since his sentencing, the Sentencing Commission and Supreme Court have both recognized the impact that age has on decision making, finding that individuals up to age 25 are less culpable than those older than 25. Id. (citing U.S.S.G. §5H1.1; Miller v. Alabama, 567 U.S. 460 (2012) (holding youth was a factor to consider in determining proportionality, specifically relating to 14-year-old defendants)); see also United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020) (noting the defendants' young ages, between 19 and 24, was an appropriate factor to consider in the § 3582(c)(1)(A)(i) analysis). Coley notes the evolving science on the relationship between age and the prefrontal cortex, arguing that, when the prefrontal cortex is not developed, there is a higher likelihood of impulsive behavior and generally less sophisticated judgment than an older person. ECF No. 54, 12 (citing U.S. Sentencing Commission, Youthful Offenders in the Federal System, at 5 (May 2017), https://perma.cc/N3V7-DPEW).

13

The Government argues that McCoy did not stand for the proposition that young adults are automatically entitled to compassionate release, and that age is only one factor to consider in the Court's analysis. ECF No. 59, 14. That is true, age alone is not necessarily an extraordinary and compelling reason for compassionate release. However, when combined with other factors, it may lend support for a finding of extraordinary and compelling reasons and thus still must be considered.

Coley next argues that there is a well-documented history of his struggles with mental health. During sentencing, the Government acknowledged Coley's "documented path of years while under supervised release where the defendant was going to treatment . . . on bipolar medication" and cited his mental health as a reason it offered to drop the second § 924(c). ECF No. 49, 6, 8. According to Coley, he was diagnosed with bipolar disorder at age 10. ECF No. 25 ¶ 75. In 2013, Coley received a psychiatric evaluation from Dr. Sherman Master, M.D., who reported Coley having Cannabis Dependence, Depressive Disorder, and history of Bipolar Disorder. Id. ¶ 76. Coley's records while incarcerated at Bureau of Prisons provide further evidence of his extensive and recurring struggles with mental health. ECF No. 54-1.

At sentencing, the Government recognized that Coley's actions during the robberies reflected impulsive and poorly thought-out

actions. ECF No. 49, 7. In the first robbery, Coley entered the store, was told to take his mask off, did so, purchased an item, and even spoke with the clerk at the front door of the store before robbing the clerk. ECF No. 29, 3. In the second robbery, Coley entered a bank and asked a clerk about opening a checking account. ECF No. 17, 3. Coley observed the manager of a Chinese restaurant making a withdrawal and robbed the manager when the manager exited the bank. Id. Neither of these robberies were well planned or at all effective in concealing Coley's identity.

The record shows that, at the time he committed the offense conduct in this case, Coley was a young man with mental health problems with which he was not properly coping and that he made dangerously bad choices. Those choices put others at risk, and in fear. But, the record also shows that Coley behaves much differently when his mental health is under control. For example, when he was incarcerated in 2011, the Bureau of Prisons reported positively on Coley's performance as an orderly:

> His supervisors state that he does Journeyman level work and wastes little time at work. They state he works well on his own and does not wait to be told what to do. They state that he learns well and rarely makes the same mistake twice . . . .

ECF No. 25 ¶ 49.

Viewed as a whole, the record here presents a young man who, at the time he committed the offense conduct, was struggling with

15

mental health issues while trying to provide for his infant child. That aspect of the record augurs somewhat in favor of a finding of extraordinary and compelling circumstances.

### C.   The Disparity of Sentence

Finally, Coley argues that there is a disparity in his sentence because he was sentenced before the First Step Act eliminated the stacking of 18 U.S.C. § 924(c) convictions in the same prosecution. In 2015, had the Government not dropped the second 924(c) conviction, Coley would have been sentenced to a minimum of 7 years for the first 924(c) and 25 years minimum for the second. In other words, before being sentenced for the robbery, Coley would have been facing a minimum of 32 years incarceration. Coley argues that the backdrop of the 25 additional years threatened by the second § 924(c) charge led him to agree to a sentence of 27 years incarceration, notwithstanding the significant disparity between the guideline range and the agreed sentence. As defense counsel mentioned at sentencing, "the best [the defense] could do is to get the government to agree to decrease by five years . . . ." ECF No. 49, 13.

The disparity between what Coley received (324 months) for the three counts of conviction and the guideline range today for those three counts is significant: 324 months versus 151-174 months. There is even a significant disparity between the imposed

sentence (324 months) and the guideline range for all four counts (214-225 months).

Under the policy statement, to qualify for compassionate release due to an unusually long sentence, Coley must (1) have received an unusually long sentence; and (2) served at least 10 years of the term. U.S.S.G. § 1B1.13(b)(6). Then, the Court can consider a change in the law to determine whether there is an extraordinary and compelling reason, "but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." Id.

First, Coley received an unusually long sentence. Given the leverage of a minimum 32-year sentence on the Section 924(c) charges alone, Coley agreed to a sentence significantly above the guidelines range for the offenses of conviction. Coley has been incarcerated since July 2015, so he has served more than 10 years of his sentence. ECF No. 65. The law on sentence stacking has changed such that Coley would no longer be subject to 32 years minimum sentence for the two Section 924(c) charges. And, as explained above, there is a great disparity between the sentence imposed and what Coley likely would receive if sentenced today (whether for the three offenses of conviction or for all four charges).

17

The Government argues that Coley cannot renege on his plea agreement which was wise at the time but would be unwise now. ECF No. 59, 10. The Government cites to United States v. Blick for the proposition that a defendant "cannot now ask to re-bargain . . . because of changes in the law." 408 F.3d 162, 170 (4th Cir. 2005) (internal citation omitted). Further, the Government says that both Coley and the Government benefitted from the agreement, and that the Court should not deprive the Government of the benefit of its bargain. ECF No. 59, 12. It is true that plea bargains "rest on contractual principles," but it does not follow that there are no circumstances in which a plea agreement can be altered pursuant to intervening circumstances. United States v. Plauche, 744 F. App'x 166, 167 (4th Cir. 2018) (per curiam); United States v. Ringling, 988 F.3d 504, 506 (4th Cir. 1993) ("Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain."). Those cases all involved appeals of sentences with plea agreements containing waivers of appeal, and are not really helpful in resolving the issue presented here.

The Government relies on United States v. Jenkins, 50 F.4th 1185 (D.C. Cir. 2022) and United States v. Brock, 39 F.4th 462 (7th Cir. 2022) to argue that Coley cannot renege on his plea merely because the law has changed, making the punishment less

18

severe. In Concepcion, the Supreme Court held that courts could consider intervening changes in law for Section 404 motions. Concepcion v. United States, 597 U.S. 481, 500 (2022). Concepcion dealt specifically with a Section 404 motion under the Fair Sentencing Act, but there is no reason that the rationale of Concepcion does not equally apply to Section 603 motions. 597 U.S. at 488. Thus, the arguments based on Jenkins and Brock are in conflict with Concepcion.

The Government also cites United States v. Hendrickson, 1:15-cr-95, 2022 WL 16700677, at *3 (W.D.N.C. Nov. 3, 2022), where Hendrickson argued in his compassionate release motion that he would have received a better plea offer if the stacking provisions of § 924(c) had not applied. The court rejected that argument, holding that, because both § 924(c) charges were dropped pursuant to the plea agreement, Hendrickson received the benefit of his bargain and cannot attempt to re-negotiate his plea because of changes in the law. Id. However, Hendrickson did not take Concepcion into account.

Several district court decisions in this Circuit have held that the change in guidelines which would lead to different circumstances for plea negotiations to be extraordinary and compelling. See United States v. May, Civil No. 8:12-cr-00278, 2024 WL 4591034, at *12 (D. Md. Oct. 25, 2024) (holding that a

change in sentencing exposure based on change to the armed career criminal statute was extraordinary and compelling even where defendant pled guilty under Rule 11(c)(1)(C)); United States v. Barbour, 688 F. Supp. 3d 335, 342-43 (W.D. Va. 2023) (holding that, even though defendant pled guilty under Rule 11(c)(1)(C), the differential in sentencing exposure at time of original sentencing and at time of compassionate release motion was such that the differential was an extraordinary and compelling circumstance). The reasoning in May and Barbour is informative.[4]

### F.   Need to Prevent Unwarranted Sentence Disparity

The first question is whether there is a sentencing disparity between the sentence imposed and that which likely would be imposed today. Here, the answer is yes. If sentenced today for three counts of conviction, the guideline range would be 151-174 months, far less than the 342 months. Even if sentenced for the four charged counts (including COUNT TWO), the guideline range would be 214-

---

[4] In United States v. Cogdell, the defendant did not receive stacked sentences but argued that the threat of stacked sentences caused him to agree to a higher sentence than he would have without that threat. Criminal Case No. 3:16-cr-103-2, 2024 WL 5193616, at *13 (E.D. Va. Dec. 20, 2024). The Court denied his motion in part because Cogdell committed 19 total robberies, meaning he was unlikely to have received a guidelines sentence anyway. Id. at *14. In contrast, Coley likely would have been sentenced in the guideline range.

225 months,[5] again far less than the 324 months that were imposed. So, here the record establishes a disparity.

But, is it an unwarranted disparity? Something is unwarranted if it is "unjustified" or "lacking in adequate or official support." Unwarranted, Merriam-Webster, https://perma.cc/6ZXV-C2XX (last visited Jan. 20, 2026). Here, the justification for the imposed sentence is the presence of the so-called "stacking" provision of § 924(c) the possible effect of which, without doubt, was highly instrumental in the agreement that produced the imposed 324 month sentence. Today, that stacking provision no longer exists. It was eliminated because Congress considered it to be unjustified, i.e., unwarranted.

Thus, judged as of today (which is the task at hand) there is an unwarranted sentencing disparity between what likely would happen today and what happened at sentencing in 2015. Without the stacking provision would Coley and the United States likely have agreed to the 324 month sentence? Would the Court likely have granted the upward variance motion that produced the agreed upon range?

Coley says no. Logic and the record support that assertion. The Government does not say otherwise. Instead, it takes the view that it is entitled to the benefit of its bargain, invoking the

---

[5] ECF No. 65, 2 n.1.

21

established principles of contract law. ECF No. 59, 11-12. On that basic point, the Government is correct: plea agreements are contracts and are governed by the basic precepts of contract law.

Of course, contract law embodies principles other than the one that assures each party the benefit of the bargain which was negotiated. Coley's motion asserts, in essence, that both he and the Government made the recommendation for a 324 month sentence on the fundamental assumption that the stacking provision was applicable and that neither party reasonably anticipated the change in the law that removed the fundamental assumption on which the contract was made. "Mr. Coley's request for relief . . . is based on the fact that Mr. Coley entered into an agreement based on factors that are no longer the law." ECF No. 62, 2. Further, Coley says that "the conditions of [his] agreement to enter the plea were entirely informed by the process of § 924(c) stacking that existed at the time of [his] sentencing. Everyone in the courtroom understood that was the case . . . ." Id. at 1. The Government does not dispute those assertions. In sum, both Coley and the Government entered the plea agreement with its recommended 324-month sentence (based on upward variance motions filed by both parties) on the "occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made." Opera Co. of Bos., Inc. v. Wolf Trapp Found. for Performing

22

Arts, 817 F.2d 1094, 1100 (4th Cir. 1987). And, that, held the Court of Appeals was a "correct statement of the modern and prevailing doctrine of impossibility . . . to be essentially as equitable in character . . . ." Id.

In this case, that unarticulated principle is the linchpin of Coley's unwarranted disparity argument. Here, the application of the stacking provision was a fundamental assumption on which the parties agreed to (a) move to upwardly depart; and (b) recommend a sentence far exceeding the guidelines. Moreover, neither party reasonably foresaw that the law on that topic would be changed so as to eliminate that assumption.

And, post-sentencing changes in the law can be recognized as extraordinary and compelling circumstances. Concepcion, 597 U.S. at 500. Where, as here, that change in the law, an occurrence not reasonably foreseeable, lay at the heart of the sentence, well-settled equitable principles of fairness are called into play in determining whether a benefit of the bargain argument forecloses the finding that an obvious and substantial disparity constitutes an extraordinary and compelling reason for compassionate release.

Here the benefit of the bargain concept must be assessed in perspective of the fundamental assumptions on which the bargain was struck. When those assumptions no longer exist because of a change in the law, the sentence on which the assumptions were

23

based, the Government's benefit from the bargain, if enforced, present "such [a] severe consequence[]" as to be "beyond the scope of the assignment of risks inherent in the contract, that is beyond the agreement made by the parties." Opera Co. of Bos., Inc., 817 F.2d at 1100. And, thus the resulting sentencing disparity is an unwarranted one.

Overall, the combination of the very significant sentencing disparity, Coley's youth at the time of his crimes, and his struggles with mental health constitute extraordinary and compelling reasons to reduce Coley's sentence. So now the analysis turns to the 18 U.S.C. § 3553(a) factors. See, e.g., United States v. Burleigh, 145 F.4th 541, 548 (4th Cir. 2025).

## IV.  18 U.S.C. § 3553(a) Analysis

Section 3553(a) instructs the courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the crime, whether the sentence promotes respect for the law and just punishment for the offense, whether the sentence affords adequate deterrence, whether the sentence protects the public, and a need to avoid any unwarranted disparities, among other factors. 18 U.S.C. §§ 3553(a)(1), (2), (6). In this analysis, the Court must consider Coley at present, including any rehabilitation. Concepcion, 597 U.S. at 492-93, Pepper v. United States, 562 U.S. 476, 490 (2011).

24

### A.    The Nature and Circumstances of the Offense

As discussed previously, Coley's offenses were undoubtedly serious. He pled guilty to two robberies, both involving brandishing a firearm. The threat of violence had significant impacts on the victims of his robberies, that should not, indeed, cannot, be discounted in any way. And, of course, the means of committing the robberies posed the risk of death or serious injury to the victims of the crimes. This factor counsels against granting the MOTION.

### B. The History and Characteristics of the Defendant.

Coley has a significant and well-documented history of mental illness. He has been in and out of mental health treatment throughout his life, starting at a young age. His home life was also unstable, and he witnessed domestic violence between his parents. His parents struggled with incarceration and drug abuse, which, in turn, affected Coley. Nevertheless, according to his middle school science teacher, Coley was a really good student who even helped his teacher grade papers. ECF No. 54-6. The record shows that Coley's struggles in his young life impeded his ability to properly cope with his mental health.

While incarcerated on these charges, Coley has continued to struggle with mental illness. At one time he attempted suicide. However, he has since earned his GED, is now employed as an

orderly, and has taken a variety of educational courses. ECF No. 54-2. Looking at the totality of Coley's record, a pattern emerges. When he is managing his mental health, he is able to be a productive member of society and even help those around him. When his mental health is unmanaged or unmedicated, he struggles to control his behavior. This is reflected by the positive comments about Coley from his middle school science teacher, his supervisors while he was incarcerated in early 2010s, and the letter from friend Danette Bland. PSR ¶ 49; ECF No. 54-6, 3-4. Coley appears to better understand his mental health now. ECF No. 54-6, 1.

It is also important to consider Coley's criminal history. Much of his record consists of driving-related charges. But, there are also some very serious convictions in his history. He was convicted of possessing a sawed-off shotgun in 2010, has previously been involved as an accessory in a robbery, and was convicted of both a possession of a firearm and a sexual battery at different times as a juvenile. Coley's previous crimes were, indeed, serious. The previous criminal conduct reflects the impulsivity and poor decision-making of a young man struggling with mental illness.

The Government emphasizes Coley's pattern of struggling to adhere to supervision conditions. ECF No. 59, 20. And, indeed, Coley does have a history of violating supervised release orders by not getting a job and testing positive for drugs. Id. Although

it is not an excuse for that conduct, Coley's behavior indicates an attempt to self-medicate for the mental health issues which he could not control. He is now treated and managed for those conditions.

On balance, this factor weighs, albeit only slightly, in favor of granting the MOTION.

### C.    Deterrence, Respect for the Law, and Protection of the Public

These three related factors involve the forward looking aspects of sentencing. Incarceration protects the public from future crimes committed by the defendant and it deters him and others who would be inclined to commit crimes such as the one committed by Coley. Where, as here, the defendant committed serious crimes that threaten the public and the defendant also has a significant criminal history of dangerous behavior deterrence is not served by compassionate release unless there is evidence that his propensity toward violence has changed. Here, it appears that much of Coley's criminal past and the offenses of conviction were influenced by his untreated mental health and there is evidence that treatment has helped stabilize his propensity to act out with violence. This factor does not foreclose release, but it does tell of some uncertainty in awarding release.

**D. Need to Prevent Unwarranted Disparities**

The disparity issue has been assessed thoroughly above in deciding whether there are extraordinary and compelling circumstances.[6] That discussion is incorporated here by inference.

In sum, there is a very substantial unwarranted disparity between the imposed sentence and the one to which Coley would be exposed were he sentenced today. And, that disparity cuts strongly in favor of granting the MOTION to afford some relief.

Considering the very serious nature of the offense and Coley's inclination toward violence, the fact that he committed the offense conduct while on supervised release, and the fact that he has served only approximately ten years in prison, immediate release does not serve any of the § 3553(a) factors. On the other hand, the unusually long sentence, and the previously discussed disparity, Coley's age and mental condition at the time of the offense calls for an adjustment of the sentence to correct the disparity.

The correct calculation of the guidelines, had there been no disparity (and still accounting for the brandishing) was a range of 151-174 months. A sentence of 174 months serves all of the § 3553(a) factors and is sufficient but not greater than necessary to achieve that end.

---

[6] Supra pp. 21-24.

28

**CONCLUSION**

Accordingly, it is hereby ORDERED that the MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT AND MEMORANDUM IN SUPPORT (ECF No. 54) will be granted and the defendant's sentence of 324 months will be reduced to a total of 174 months of incarceration, consisting of 90 months on COUNTS ONE and THREE to run concurrently, and 84 months on COUNT FOUR, to run consecutively to the concurrent terms of imprisonment on COUNTS ONE and THREE.

It is so ORDERED.

_____ /s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February ____, 2026

29